# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| PALMER A. GOODBAR et al., ) | |
| ) | |
|    Appellants, ) | Civil Action No.: 5:12cv063 |
| ) | |
| v. ) | |
| ) | |
| HERBERT T. BESKIN, CHAPTER 13 ) | |
| TRUSTEE, ) | |
| ) | By: Hon. Michael F. Urbanski |
| and ) |     United States District Judge |
| ) | |
| CLARKSON MCDOW, JR., U.S. ) | |
| TRUSTEE, ) | |
| ) | |
|    Appellees. ) | |

## **MEMORANDUM OPINION**

In this bankruptcy appeal, Palmer and Debra Goodbar seek an award of attorney's fees and costs in excess of that ordered by the bankruptcy court. Related to this fee request is a Motion to Dismiss for Lack of Jurisdiction pursuant to 28 U.S.C. § 158(a), filed by Herbert T. Beskin, the Chapter 13 Trustee. For the reasons set forth below, the court denies the motion to dismiss for lack of jurisdiction and affirms the bankruptcy court's determination of reasonable attorney's fees.

    **I.**    **Procedural History and Facts**

On September 29, 2009, Palmer and Debra Goodbar ("debtors") hired Harry W. Brown, Esq., ("Brown") for the purpose of assisting them with their pending bankruptcy. Debtors voluntarily filed a Chapter 13 petition on December 17, 2009. As part of the bankruptcy proceeding, on February 2, 2010, debtors filed a motion to sell a parcel of real estate pursuant to 11 U.S.C. § 363 (the "Sale Motion"). The lender associated with the real estate, Wells Fargo

Financial, did not consent to the Sale Motion, resulting in the filing of an adversary proceeding on March 17, 2010 seeking release of Wells Fargo's lien on debtor's land (the "Adversary Proceeding"). A few months later, on June 4, 2010, the Sale Motion was resolved by consent order. On June 21, 2010, debtors paid the Trustee $112,459 from the sale of the real estate, and the bankruptcy court confirmed debtors' Chapter 13 plan on June 24, 2010.

On July 1, 2010, Brown filed an interim fee application seeking compensation for the work done on debtors' case from September 29, 2009 through July 1, 2010 in the amount of $27,229.83. The United States Trustee and Chapter 13 Trustee objected to the interim fee application, and between August, 2010 and March, 2011, the bankruptcy court held no less than five hearings on the interim fee application. By order dated June 29, 2011, the bankruptcy court awarded Brown $9,192.62 in interim payments for work performed between September 29, 2009 and July 1, 2010 (the "June 2011 Order"). In the June 2011 Order, the bankruptcy court found that the attorney's fees for the bankruptcy proceedings, including the Sale Motion and the Adversary Proceeding, were controlled by two documents: (1) a disclosure filed pursuant to Federal Rule of Bankruptcy Procedure 2016(b), which governed compensation for work associated with the main case (the "Main Chapter 13 Case"), and (2) a specific Retainer Agreement, covering compensation for work done on the Adversary Proceeding and the Sale Motion. The court awarded counsel for debtors $2,650.00 for the main case, the specific amount reflected in the Rule 2016(b) disclosure. The court awarded $5,160.50 for the Adversary Proceeding and $600.00 for the Sale Motion. The court awarded $782.12 in expenses, finding that the amount requested, $1,492.33, contained duplicate charges and otherwise lacked documentation. In all, the June 2011 Order on the interim fee application awarded a total of $9,192.62 for the period through July 1, 2010.

On July 29, 2011, Brown filed a supplemental application for interim fees, this time including an accounting of all photocopying expenses. On August 19, 2011, the court issued an order denying payment for the additional photocopying expenses, finding that Brown failed to establish why the photocopying expenses were necessary for the debtors' bankruptcy case (the "August 2011 Order"). The bankruptcy court declined Brown's renewed request to award interim fees for the period before July 1, 2010 beyond those reflected in the June 2011 Order.

Debtors were discharged from bankruptcy on September 8, 2011. On September 25, 2011, Brown filed a final fee application covering the period of July 2, 2010 until the date of discharge. This final fee application sought $21,671.00 in fees for seventy-seven hours of work and $1,299.15 in expenses. Both Trustees objected, arguing that the bulk of the fees sought concerned those incurred in defense of the interim fee application, and, as such, such work was not done for the benefit of debtors. Under 11 U.S.C. § 330, the Trustees also argued that the fees sought in the final fee application were unreasonable and excessive. Brown amended the final fee application three times before a final hearing was held on January 19, 2012.

On April 19, 2012, the bankruptcy court awarded counsel $7,190.00 of the $22,970.15 requested (the "April 2012 Order"). The April 2012 Order concluded that Brown should be paid: (1) fees at a rate of $82.50 an hour from the bankruptcy estate for the seventy-two hours spent preparing and defending the interim fee application because Brown raised a reasonable defense to the good faith objections made by the Trustees; and (2) fees at a rate of $250.00 an hour from the bankruptcy estate for the five hours of legal services provided to debtors, for the period from July 2, 2010 until the date of discharge.

In the April 2012 Order, the bankruptcy court carefully assessed whether Brown should be allowed to recover any fees for defending his interim fee application. The court determined

3

that in analyzing the propriety of awarding fees for the defense of a fee application, it must consider whether the objections to the fee application were taken in good faith and whether the objecting party prevailed. In concluding that Brown was entitled to roughly one-third of the fees requested for litigating the fee issue, the bankruptcy court reasoned that fees should be awarded in proportion to his success on the fee application. Likewise, the court concluded that as Brown received only one-third of the fees requested, the Trustee's objections were made in good faith. Thus, given the fee award, the court concluded that there was no evidence that the fee application defense was unreasonable, nor was there evidence that the objections to the fee application were made in bad faith. On balance, the court reasoned that the outright denial of compensation for the defense of a marginally successful fee application was inappropriate as it would chill the defense of fee applications generally. At the same time, the court found the totality of the request to be excessive. Thus, the court awarded fees for the defense of the fee application at a rate of $82.50 per hour and awarded fees for five hours of legal services provided to debtors at a rate $250.00 per hour.[1]

On May 3, 2012, Brown filed an appeal of the award of attorney's fees determined by the bankruptcy court, as set forth in the June 2011, August 2011, and April 2012 Orders. On August 13, 2012, the Chapter 13 Trustee filed a motion to dismiss for lack of jurisdiction. On August 23, 2012, United States Trustee and the Chapter 13 Trustee filed briefs in support of the bankruptcy court's fee award.

---

[1] In so doing, the court found that a pre-Bankruptcy Reform Act of 1994 case, Nunley v. Jessee, 92 B.R. 152, 153 (W. D. Va. 1988), did not apply. In Nunley, the court held that "litigants in bankruptcy who prevail on a fee award initially are routinely entitled to additional fees required to defend those fees on appeal." Id. The bankruptcy court held that even if Nunley did apply, counsel for debtors could not be considered a prevailing party in the initial fee application award because 67% of his fees were disallowed.

4

## II.

In the motion to dismiss the appeal for lack of jurisdiction, (Dkt. No. 14), the Chapter 13 Trustee makes two arguments. First, he argues that the "Statement of Issues on Appeal," filed pursuant to Federal Rule of Bankruptcy Procedure 8006, does not reference an appeal of either the June 2011 Order or the August 2011 Order. As such, the Chapter 13 Trustee argues that the fee issues reflected in those orders were not preserved on appeal. Second, even if the Statement of Issues on Appeal adequately covered the June 2011 Order and the August 2011 Order, Brown failed to timely appeal those orders. Neither of these arguments has merit.

First, the Statement of Issues on Appeal appears to cover the waterfront as regards the fee dispute. It states: "Did the Court abuse its discretion in awarding compensation in this case?" The record makes clear that compensation for the entirety of the bankruptcy case was encompassed within those three orders, and the Statement of Issues on Appeal clearly indicates that an appeal is being taken from the award of compensation for the whole case.[2] As the June 2011 Order and the August 2011 Order concern compensation before July 1, 2010 and the April 2012 Order concerns fees incurred thereafter, the court cannot consider "compensation in the case" without addressing all of these orders. In short, the Statement of Issues on Appeal sufficiently identifies the issue on appeal. See Snap-On Tools, Inc. v. Freeman, 956 F.2d 252, 255 (11th Cir. 1992) (holding that when an issue is not inferable from the issues listed pursuant to Rule 8006, that issue is deemed waived and will not be considered on appeal).

---

[2] Even were the court to accept the Chapter 13 Trustee's argument that the Statement of Issues on Appeal did not technically abide by the strictures of Rule 8006 by specifying the orders appealed from, Rule 8001(a) states that "[a]n appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court ... deems appropriate, which may include dismissal of the appeal." Thus, as the language of the Rule 8001 makes clear, "only the failure to file a notice of appeal, which deprives the reviewing court of jurisdiction, mandates dismissal. In contrast, the district court does not invariably dismiss for breaches of other procedural rules, including Rule 8006." See In re CPDC Inc., 221 F.3d 693, 698-99 (5th Cir. 2000).

Nor does the Chapter 13 Trustee's argument that the fee appeal was untimely have merit. The June 2011 Order and the subsequent August 2011 Order concern interim fees. Pursuant to 11 U.S.C. § 331, the bankruptcy court is permitted to issue interim fee orders during the pendency of a bankruptcy petition. That section states:

> a debtor's attorney . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

The purpose of § 331 is to alleviate the economic burden on counsel in long and complicated bankruptcy proceedings. See In re Mansfield Tire & Rubber Co._, 19 B.R. 125, 127 (Bankr. N.D. Ohio 1981). In determining whether to order interim fees, the bankruptcy court engages in the same calculation as it does any fee application under 11 U.S.C. § 330, which requires the court to consider certain factors and ensure that the fee is reasonable. The plain language of 11 U.S.C. § 330 makes it clear that interim compensation orders are subject to later review and modification by the bankruptcy court. Specifically, §330(a)(5) allows for modification, stating:

> The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

Given the statutory ability to modify an order on an interim fee application, the Fourth Circuit has held that "an <u>interim</u> award of compensation granted by a bankruptcy court in an ongoing bankruptcy proceeding generally is an interlocutory order not subject to review . . . ." In re Computer Learning Centers, Inc., 407 F.3d 656, 660 (4th Cir. 2005) (internal quotation omitted, emphasis in original); see also In re Fraidin, 92-5-2338-JS, 2008 WL 7810791 (D. Md. Nov. 18, 2008). Indeed, the Western District of Virginia has noted that an interim fee award is

"normally not appealable as a final order." In re Sandman Associates, L.L.C., 251 B.R. 473, 480 n.12 (W.D. Va. 2000).[3]

The June 2011 Order and the August 2011 Order awarding interim fees pursuant to 11 U.S.C. § 331 are interlocutory orders, and do not constitute a final judgment on compensation for the bankruptcy proceeding as a whole. Indeed, pursuant to 11 U.S.C. § 330(a)(5), the bankruptcy court continued to retain the ability to reduce the amount of compensation notwithstanding any award made in the June 2011 Order and the August 2011 Order.[4]

In contrast, the April 2012 Order ruled on the final fee application for work done from July 2, 2010 until discharge on September 8, 2011. During this time, Brown accrued seventy-seven hours of work, which included a successful objection to a claim by Citifinancial in the amount of $13,000.00. Brown timely appealed the April 2012 Order on the final fee application. An appeal of the final order or judgment of the award of attorney's fees for the case as a whole "preserves all issues addressed in previous interlocutory orders." Barnes-Duncan v. Branigan, 2010 WL 761127 (D. Md. Mar. 1, 2010) (citing In re J.T.R. Corp., 958 F.2d 602, 604 n.1 (4th Cir.1992)). Thus, Brown appropriately appealed the issue of compensation in the entire case after the final order on compensation issue on April 19, 2012, and the issues presented in all three orders are properly before the court.

---

[3] There are a few exceptions to the general rule that interim fee awards are not final orders. For example, the Sixth Circuit recognized that an interim compensation award may be final if it conclusively determines the amount of compensation to be paid to the attorney and is no longer subject to modification by the bankruptcy court. In re Boddy, 950 F.2d 334, 336 (6th Cir.1991). Also, an order approving interim compensation in an ongoing bankruptcy proceeding may constitute a final judgment or order for purposes of an appeal where the attorneys for the debtor have been discharged from further representation. In re Yermakov, 718 F.2d 1465 (9th Cir. 1983); see also In re Dahlquist, 751 F.2d 295, 297 (5th Cir. 1985). Neither of these exceptions applies here.

[4] Interim fee applications are subject to later review and reassessment by the bankruptcy court. 11 U.S.C. § 330(a)(5). This is so even if the compensation sought is awarded in full in the interim fee order, as was done here, or if a portion of the compensation sought is held back. 9 Collier on Bankruptcy ¶ 2016.06, p. 2016-8 (16th ed. rev. 2012). Even though the bankruptcy court paid the entire flat fee in the interim fee award, the court could have nonetheless modified the fees awarded in the case as a whole by decreasing the final fee award by any excess awarded in the interim fee.

7

# III.

## A. Standard of Review

"The standard of review in relation to an award of attorneys' fees depends on the nature of the alleged error." Boyd v. New Towne Properties, CIV. JKB-10-3094, 2011 WL 801963, at *2 (D. Md. Feb. 9, 2011) (citing United Food and Commercial Workers v. Marval Poultry, 876 F.2d 346 (4th Cir. 1989)). The district court reviews a bankruptcy court's decision as to whether and in what amount to award fees for abuse of discretion. Id. Specifically, the Western District of Virginia has held that the allowance of attorney's fees:

> is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered. And an appellate court is not warranted in overturning the trial court's judgment unless under all of the facts and circumstances it is clearly wrong.

In re Dixon, 228 B.R. 166, 178 (W.D. Va. 1998) (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978)). "An abuse of discretion finding by this court is warranted where the bankruptcy court either (1) failed to exercise its discretion; (2) failed to take relevant facts constraining its exercise of discretion into account; or (3) based its conclusions on erroneous conclusions of law or fact." Id. A district court reviews the factual findings of a bankruptcy court under a clearly erroneous standard. Fed. R. Bankr. P. 8013; In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992). Finally, for alleged errors of law, de novo review is required. Johnson, 960 F.2d at 399.

Here, Brown first argues that the bankruptcy court erroneously interpreted the Retainer Agreement between counsel and debtors and the Rule 2016(b) disclosure, which led to the miscalculation of attorney's fees as it pertained to the Main Chapter 13 Case. As the question of the interpretation of a contract involves a question of law, this issue is reviewed de novo. Second, Brown argues that the bankruptcy court abused its discretion when setting the amount of

attorney's fees recoverable in the Main Chapter 13 Case, the Adversary Proceeding, and the Sale Motion. This issue, as it relates to the amount of the attorney's fees, will be reviewed under the abuse of discretion standard.[5]

**B. Interpretation of the Fee Agreement**

This case concerns the interpretation of two fee agreements: the 2016(b) disclosure and the Retainer Agreement. In interpreting the applicability of these agreements to the compensation in this case, it is helpful first to understand the statutory framework and purpose of Rule 2016(b) disclosures in bankruptcy cases.

Given the nature of bankruptcy proceedings, attorney's fees are necessarily scrutinized by the bankruptcy court. Specifically, Sections 329, 330, and 331 of the Bankruptcy Code govern the court's analysis of attorney compensation. Section 329 deals with the "classic retainer [that] is paid to a bankruptcy attorney prepetition," i.e., an attorney agreement entered into prior to the filing of the bankruptcy petition itself. 9 Collier on Bankruptcy, ¶ 2016.18, p. 2016-22 (16th ed. rev. 2012). Section 329(a) requires counsel for a debtor to:

> file with the court a statement of the compensation paid or agreed to be paid if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Bankruptcy Rule 2016(b) complements Section 329(a) and requires both the filing of a disclosure statement and any supplemental disclosure of a "payment or agreement not previously disclosed." Fee disclosure under Section 329(a) and the Rules is mandatory, not permissive, In

---

[5] Brown also argues that the bankruptcy court erred by inappropriately considering evidence of private settlement negotiations in awarding compensation, and that the court incorrectly applied the prevailing party doctrine as set out in Nunley. However, nowhere in Brown's brief does he address or provide any argument as to either of these issues. First, the court is unable to determine what "evidence of private negotiation" that Brown is referencing in the Statement of Issues on Appeal. Second, as to the issue of the prevailing party doctrine, it is clear from the record that the bankruptcy court analyzed the doctrine in its April 2012 Order. However, Brown failed to provide specific objections to the analysis of the bankruptcy court. Merely stating that the court erred in its application of a doctrine or rule is insufficient to allow a court sitting on appeal to determine exactly the issue being appealed. Because Brown failed to brief these issues, the court cannot consider them.

re Whaley, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002), and the duty to disclose is a continuing one, 9 Collier on Bankruptcy ¶ 2016.17, p. 2016-20 (16th ed. rev. 2012).

Section 329(b) reflects a bankruptcy court's duty to carefully review the compensation paid to the debtor's attorney. 11 U.S.C. § 329(b) ("If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment . . . ."). See also In re B & W Tractor Co., Inc., 38 B.R. 613, 617 (Bankr. E.D.N.C. 1984) ("[T]he Court has the duty to examine the reasonableness of attorney's fees even in the absence of an objection"). As noted by Collier,

> [c]ourts have long recognized that the debtor is in a vulnerable position and is highly dependent on his attorney and therefore will be reluctant to object to the fees of the attorney. In order to prevent overreaching by an attorney, and provide protection to creditors, section 329 requires that an attorney submit a statement of compensation to be paid to enable the court to determine if the fees are reasonable. Thus, section 329 establishes an important and valuable process that is statutorily mandated to insure that only reasonable, necessary, beneficial professional services and fees are charged against and paid by a prospective or prepetition debtor in bankruptcy.

3 Collier on Bankruptcy ¶ 329.01, p .329–4 to –5 (16th ed. rev. 2012) (internal citations omitted). See, e.g., In re Courtois, 222 B.R. 491, 494-95 (Bankr. D. Md. 1998). The legislative history accompanying Section 329 notes that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H. R. REP. NO. 95–595, at 329 (1977).

Thus, a court must carefully assess a Rule 2016(b) disclosure to ensure compliance with the legislative intent and purpose behind the disclosure. "It is only by review of the 2016(b) statement that the trustee, the court, or any interested party can be apprised of the debtor's intentions to pay counsel before such payment occurs, and of any additional services that counsel

10

intends to perform." 9 Collier on Bankruptcy ¶ 2016.18, p. 2016-22 (citing In Re Fricker, 131 B.R. at 940-941). Specifically, Collier admonishes counsel to "spell out in the disclosure exactly which services are covered by the basic fee being paid to the attorney, which services are not covered and an hourly rate for the latter category of services." Id.

On December 17, 2009, Brown filed the Rule 2016(b) disclosure reflecting an agreed upon fee of $2,650.00. According to Section 6 of the Rule 2016(b) disclosure, Brown agreed to render the following services in return for this $2,650.00 fee:

> (a) analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>
> (b) preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>
> (c) representation of the debtor at the meeting creditors and confirmation hearing, and any adjourned hearings thereof;
>
> (d) . . . Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC [§] 522(f)(2)(A) for avoidance of liens on household goods.

Section 7 of the Rule 2016(b) disclosure specifies the services not covered by the $2,650.00 flat fee, stating:

> By agreement with the debtor(s), the above-disclosed fee does not include the following services:
>
> Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding, motion to sell real property, etc.

Brown argues that Section 7 of the disclosure contains additional language limiting application of the $2,560.00 flat fee. Brown argues that Sections 7(a) and 7(b) allow him to charge additional hourly fees under the Retainer Agreement which exceed the $2,650.00 cap set by the flat fee. Sections 7(a) and 7(b) provide as follows:

11

(a) Debtor(s) entered into a fee agreement with additional terms and will be charged based upon hourly rates. The provisions of the fee agreement control conflicting provisions between this disclosure and the agreement.

(b) The Fee disclosed in (1) above is a flat fee estimate which is subject to change, because the attorney fee agreement is based upon horly [sic] rates.

The Retainer Agreement required debtors to pay Brown an advanced legal fee of $1,000.00, and set an hourly rate of $250.00 an hour for out of court work and $450.00 an hour for in court work.

The bankruptcy court correctly construed the Rule 2016(b) disclosure and the Retainer Agreement in rejecting Brown's argument. Plainly, the $2,650.00 fee reflects payment for the performance of the specific discrete tasks laid out in Section 6 of the disclosure, encompassing the Main Chapter 13 Case. Section 7 carves out fees associated with the Sale Motion and Adversary Proceeding. Therefore, the bankruptcy court was plainly correct in concluding that these two agreements controlled compensation in this case. As did the bankruptcy court, the court rejects Brown's argument that the Rule 2016(b) disclosure and the Retainer Agreement are in conflict, liberating him to charge fees in excess of the flat fee set forth in the Rule 2016(b) disclosure for work associated with the Main Chapter 13 Case. The bankruptcy court correctly interpreted the plain wording of the Rule 2016(b) disclosure to cover the Main Chapter 13 Case. Indeed, accepting Brown's argument that he may charge fees in an undisclosed amount over and above the $2,650.00 for work on the Main Chapter 13 Case would render the Rule 2016(b) disclosure meaningless. Moreover, it would contravene the goal of fee transparency of both Section 329 and Rule 2016(b), impede the reasonableness review by the bankruptcy court, and run counter to counsel's ongoing duty to fully disclose fee agreements to the court.

## C. Reasonability of the Fee Apportioned

The determination of the amount of attorney's fees awarded is reviewed for abuse of discretion. Brown argues that the bankruptcy court abused its discretion in determining the amount of fees to award.[6]

In making the reasonability determination in a Chapter 13 case, a bankruptcy court "may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). The "other factors" include those set forth in § 330(a)(3):

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of [the case];
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In addition to these considerations, the Fourth Circuit has instructed bankruptcy courts to evaluate fee applications in light of the following twelve factors (the "Johnson factors"):

---

[6] Counsel for debtors also alleges that the bankruptcy court made specific factual errors in determining the amount of attorney's fees. Nevertheless, counsel for debtors offers no indication as to what these factual errors were, and the court declines to speculate.

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Harman v. Levin, 772 F.2d 1150, 1152 n.1 (4th Cir. 1985) (citing Barber, 577 F.2d at 226 n.28, and Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

**i.**

The flat fee of $2,650.00 is a reasonable award of fees for the Main Chapter 13 Case. Even when a Rule 2016(b) disclosure is made, the bankruptcy court has an independent duty to scrutinize the flat fee and test it for reasonableness. 11 U.S.C. § 330(a)(4)(B). Specifically, the bankruptcy court may require counsel to justify a flat fee disclosed on counsel's Rule 2016(b) disclosure if it appears excessive. In re Courtois, 222 B.R. at 494-95. The attorney requesting compensation from the bankruptcy estate bears the onus of demonstrating to the bankruptcy court that the services performed and fees incurred were reasonable. In re Rosen, 25 B.R. 81, 86 (Bankr. D.S.C. 1982) (citations omitted).

The bankruptcy court did not abuse its discretion in awarding $2,650.00 for the Main Chapter 13 Case. The Bankruptcy Court of the Western District of Virginia has adopted a standard "no-look" fee amount of $2,750.00.[7] Thus, the $2,650.00 fee, falling within the scope of the no-look fee, was not excessive and did not require additional scrutiny.

---

[7] "To simplify the approval of fees in Chapter 13 cases, many bankruptcy courts across the country have adopted some form of "no-look" fee that is deemed reasonable without further review by the bankruptcy court." Stephens, Boatwright, Cooper & Coleman, PC v. Beskin, 3:12CV00020, 2012 WL 4863796, at *3 (W.D. Va. Oct. 12, 2012). See also In re Slater, Case No. 10–62521, 2012 WL 4863796 (Bankr. W.D. Va. Sept. 6, 2011) (indicating that

14

**ii.**

Compensation for legal work associated with the Sale Motion and the Adversary Proceeding, subject to the Retainer Agreement, also require court approval if they are charged on an hourly basis, or in excess of a flat fee disclosed in counsel's Rule 2016(b) disclosure agreement. 11 U.S.C. § 330(a).

Brown's principal argument on appeal is that his Retainer Agreement controls the total amount of fees for this case and that he can charge hourly rates for work associated with the Main Chapter 13 Case notwithstanding the amount specified in the Rule 2016(b) disclosure. Having determined that the bankruptcy court correctly concluded that the Retainer Agreement did not apply to work associated with the Main Chapter 13 Case, the court must decide whether or not the bankruptcy court abused its discretion in deviating from the hourly rates set forth in the Retainer Agreement when awarding compensation for the Sale Motion and the Adversary Proceeding. The court finds that the bankruptcy court did not abuse its discretion in ascertaining and awarding the fees on these two matters.

The bankruptcy court must look beyond the Retainer Agreement, because "[i]n a bankruptcy case, fees are not a matter for private agreement. There is an inherent public interest that must be considered in awarding fees." In re Inslaw, Inc., 106 B.R. 331, 333 (Bankr. D.D.C.1989). The bankruptcy court, thus, has an independent duty to examine the fees for reasonableness under 11 U.S.C. § 330(a). In re 5900 Associates, Inc., 468 F.3d 326, 329-30 (6th Cir. 2006). A fee agreement between counsel and debtors is only one factor that the court must use to satisfy itself that a fee is reasonable pursuant to 11 U.S.C. § 330. In re Citation Corp., 493 F.3d 1313 (11th Cir. 2007) (reversing district court for putting too much weight on an attorney-

---

bankruptcy courts in the Western District of Virginia utilize a standard no-look fee in awarding compensation to attorneys in Chapter 13 cases. Id. at *3 n.2).

15

client fee agreement). Indeed, as the court in Computer Learning Centers, Inc., 285 B.R. at 227, noted:

> A central factor in determining an appropriate award of compensation is the prevailing market rates in the relevant community. The prevailing market rate may be more or less than an individual attorney's hourly rate. While the individual attorney's hourly rate is a factor to be considered in establishing the prevailing market rate, it is but one datum in the analysis.
> (internal citations omitted).

As regards the Sale Motion, in the June 2011 Order, the bankruptcy court reduced Brown's fee request from $1,445.00 to $600.00. In so doing, the bankruptcy court reasoned that the latter reflected an appropriate amount given the fact that no evidentiary proceeding was held incident to the motion, and that ultimately an agreed order was entered authorizing the sale. Additionally, the bankruptcy court relied on testimony of then Chapter 13 Trustee, Rebecca Connelly, who testified that the range of fees customarily charged for work done on a motion to sell was between $250.00 and $600.00. The bankruptcy court noted that the only Johnson factor that counsel for debtors had offered in support of additional fees in connection with the Sale Motion was the "results achieved" factor. However, the bankruptcy court noted that the results achieved in the Sale Motion arose primarily as a result of the Adversary Proceeding, and not the Sale Motion.

The bankruptcy court scrutinized the $5,814.00 fee requested for the Adversary Proceeding, and, finding it to be largely warranted, awarded $5,160.50. In doing so, the bankruptcy court reduced the hourly attorney fee rate from $450.00 an hour, to $250.00 an hour, noting that, in its extensive experience in the Western District of Virginia, the rate of $450.00 per hour for a lawyer with Brown's experience was unusually high.[8] Specifically, the bankruptcy

---

[8] The bankruptcy court may determine whether the requested fees are reasonable based upon its considerable background in such matters. In re Courtois, 222 B.R. at 494-95. Upon concluding that the requested fees are exorbitant and/or unreasonable, the court may properly make certain deductions. Id.

16

court noted that Brown testified that he undertook this case after an illness caused him to be absent from the practice of law for a period of time sufficient in length to require that he reorient himself to bankruptcy practice and bring himself current on the state of practice and procedure in bankruptcy. Next, the bankruptcy court closely examined the time records relating to the Adversary Proceeding. The court found that Brown sought payment for certain activities that did not qualify for compensation under 11 U.S.C. § 330 because they were merely clerical in nature. Additionally, the bankruptcy court noted that the descriptions Brown provided of the work completed failed to apprise the court of the actual nature of the work, and, thus, were not recoverable. After a thorough review of the evidence and time records before it, the bankruptcy court forthrightly applied the factors from <u>Johnson</u> and awarded reasonable compensation for the Sale Motion and the Adversary Proceeding. In the June 2011 Order and the subsequent August 2011 Order, the bankruptcy court justified the reduction of the award of expenses with a similar in-depth review of the time records and descriptions of expenses.

In the April 2012 Order, the bankruptcy court awarded counsel an additional $1,250.00 for five hours of legal work after July 2, 2010. The court awarded those fees at the previously justified hourly rate of $250.00 an hour. Given the record below, this court will not disturb the well-reasoned findings of the bankruptcy court unless it has a definitive belief that a mistake has been committed. No such mistake has been committed here, and the bankruptcy court's decision must be affirmed.

**IV.**

In sum, it is clear that the bankruptcy court carefully scrutinized Brown's fee request under the terms of the Rule 2016(b) disclosure and the Retainer Agreement and faithfully applied applicable law to the requested fees. No aspect of the bankruptcy court's review of the fee

17

applications is clearly erroneous or reflects an abuse of discretion. As such, the decision of the bankruptcy court is affirmed. An appropriate Order will be entered.

        Entered: March 26, 2013

        */s/ Michael F. Urbanski*

        Michael F. Urbanski
        United States District Judge